IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DERRICK MANNING,

      Plaintiff,

      Case No. 21-542

v.

WILLINGBORO CHICKEN, LLC d/b/a
POPEYES LOUISIANA KITCHEN, INC. –
NORTH VERSAILLES,

      JURY TRIAL DEMANDED

      Defendant.

## COMPLAINT

NOW COMES Plaintiff, Derrick Manning, by and through his attorney, Prabhu Narahari, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

l.      Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C.A. § 1981, and the Pennsylvania Human Relations Act of 1955 ("PHRA") 43 Pa. Cons. Stat. § 951 *et seq.* Plaintiff, an African-American man, alleges that Defendant intentionally refused to promote him, despite his significant qualifications, and persistently engaged in unlawful discrimination on the basis of his race. Plaintiff further alleges that he was retaliated against after he accused Defendant of engaging in discriminatory practices.

**II.**                          **Jurisdiction and Venue**

2.      This action arises under Title VII and Section 1981. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4.      Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania. The venue is proper pursuant to 28 U.S.C. § 1391(b).

5.      Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding his allegations under Title VII on May 8, 2020, under charge number 533-2020-01488. *See Exhibit 1*.

6.      Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on January 25, 2021. This Complaint has been filed within ninety days of Plaintiff's receipt, making the action timely. *See Exhibit 2*.

**III.**                              **Parties**

7.      Plaintiff, Derrick Manning ("Mr. Manning"), is an adult individual with a primary residence located at 88 Universal Road, Penn Hills, PA 15235.

8.      Defendant, Willingboro Chicken, LLC d/b/a Popeye's Louisiana Kitchen, Inc. – North Versailles ("Defendant"), is a New Jersey business corporation with a regular place of business located at 100 Menlo Park #500, Edison, NJ 08837.

9.      Defendant operates a franchise of Popeyes Louisiana Kitchen, Inc. ("Popeyes"), where Plaintiff was employed, located at 1900 Lincoln Highway, North Versailles, PA 15137.

**IV.**                                          **Facts**

10.     Mr. Manning, an African-American man, was hired to work as a cook for Defendant at its North Versailles, Pennsylvania location on September 10, 2019.

11.     He was compensated at a rate of $9.00 per hour, and he worked on a full-time basis.

12.     Prior to his hiring at this location, Mr. Manning worked as a manager at a Popeyes franchise located in Monroeville, Pennsylvania. He was employed in this managerial role for approximately nine months before applying to work for Defendant at its franchise location.

13.     At the time of his hiring with Defendant, Mr. Manning explained his qualifications to Defendant's general manager. He expressed a desire to eventually move into a management role within the franchise.

14.     Mr. Manning was told by Defendant's general manager that he would need to "put his time in" before assuming a managerial position. As a result, Mr. Manning dutifully executed all tasks that were assigned to him and made sure that his work was always prompt and correct. He maintained an excellent employment record throughout his employment with Defendant.

15.     Despite his hard work, Mr. Manning was consistently disregarded whenever he attempted to broach the subject of being promoted to a management position.

16.     Eventually, a number of new employees, all of whom were white, were hired to Defendant's staff. None of the new employees had management experience, and all of them worked in the fast-food restaurant industry for significantly less time than Mr. Manning.

17.     Several of the new employees were promoted to management positions within Defendant's franchise while Mr. Manning was ignored.

18.     Despite the fact that he consistently requested consideration for an advanced role, Mr. Manning was passed over for each of the promotions.

19.     Mr. Manning raised several objections to members of Defendant's management staff, but he was consistently disregarded.

20.     As he persisted in his objections to the lack of promotional consideration, Mr. Manning's hours were significantly reduced. He was told by members of Defendant's management staff that there was not enough work for all of the employees.

21.     However, many of new employees were scheduled for "double shifts," where they would work back-to-back shifts, often for a full week straight. This contradicted Defendant's assertion that there was not enough available work.

22.     Mr. Manning was last scheduled to work for Defendant on April 12, 2020. He was was not again scheduled due to, what members of Defendant's management called, a lack of available hours. Mr. Manning was provided with no further basis for his removal from Defendant's schedule, which, effectively, resulted in a termination.

## COUNT I
### Racial Discrimination in Violation of Title VII

23.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

24.     In order to state a *prima facie* claim of racial discrimination in violation of Title VII, a plaintiff must show that:

   a.   He "was a member of a protected class;

   b.   [He] was qualified for the position;

   c.   [He] suffered an adverse employment action; and

   d.   [T]he adverse employment action occurred under circumstances that give rise to an inference of discrimination." D'Ambrosio v. Crest Haven Nursing & Rehab. Ctr., 755 Fed. Appx. 147, 151–52 (3d Cir. 2018)(unpublished).

25.     Here, Mr. Manning is an African-American man, and, as a result, is a member of a class protected by Title VII.

26.     He was qualified for his position with Defendant on the basis of his past work experience, as well as his significant on-the-job efforts.

27.     Prior to his hiring with Defendant, Mr. Manning was employed as a manager at a separate Popeyes franchise location.

28.     Further, during his employment with Defendant, Mr. Manning was extremely successful in his role. He was never reprimanded by Defendant for inefficiency and he worked very hard for the franchise with the hope that he would eventually be promoted to the management staff.

29.     After he began to complaint to members of Defendant's management staff regarding their refusal to consider him for a promotion, Mr. Manning's working hours were reduced.

30.     A reduction in the number of hours that an employee is scheduled to work can constitute an adverse employment action for the purpose of a Title VII analysis. Klimczak v. Shoe Show Companies, 420 F. Supp. 2d 376, 386 (M.D. Pa. 2005).

31.     Thus, Mr. Manning experienced an adverse employment action as a result of his diminished working hours, which, eventually, were completely reduced to none.

32.     While the hours allotted to Mr. Manning were diminished, white employees of Defendant were scheduled to work excessive hours and were often assigned "double shifts."

33.     Mr. Manning's white counter parts, all of whom had less experience, received increased hours while he was, ultimately, removed from the schedule. This instance of adverse action and unequal treatment are the basis for an inference of discrimination.

34.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Mr. Manning's rights protected under federal and state law to be free from discrimination.

## COUNT II
### Racial Discrimination in Violation of the PHRA

35.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

36.     An analysis of a claim brought under the PHRA is "identical" to that of a claim brought under Title VII, as "Pennsylvania courts have construed the protections of the two acts interchangeably." Weston v. Pennsylvania, 251 F.3d 410, 426 (3d Cir. 2001).

37.     Because Mr. Manning is able to state a *prima facie* claim for racial discrimination in violation of Title VII, so, too, will he be able under the PHRA.

38.     Here, Mr. Manning is an African-American man, and, as a result, is a member of a class protected by Title VII.

39.     He was qualified for his position with Defendant on the basis of his past work experience, as well as his significant on-the-job efforts.

40.     Prior to his hiring with Defendant, Mr. Manning was employed as a manager at a separate Popeyes franchise location.

41.     Further, during his employment with Defendant, Mr. Manning was extremely successful in his role. He was never reprimanded by Defendant for inefficiency and he worked very hard for the franchise with the hope that he would eventually be promoted to the management staff.

42.     After he began to complaint to members of Defendant's management staff regarding their refusal to consider him for a promotion, Mr. Manning's working hours were reduced.

43.     As stated above, a reduction in the number of hours that an employee is scheduled to work can constitute an adverse employment action for the purpose of a Title VII analysis. Klimczak, 420 F. Supp. 2d at 386.

44.     Thus, Mr. Manning experienced an adverse employment action as a result of his diminished working hours, which, eventually, were completely reduced to none.

45.     While the hours allotted to Mr. Manning were diminished, white employees of Defendant were scheduled to work excessive hours and were often assigned "double shifts."

46.     Mr. Manning's white counter parts, all of whom had less experience, received increased hours while he was, ultimately, removed from the schedule. This instance of adverse action and unequal treatment are the basis for an inference of discrimination.

47.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Mr. Manning's rights protected under federal and state law to be free from discrimination.

## COUNT III
### Failure to Promote in Violation of Title VII

48.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

49.     In order to state a *prima facie* claim of failure to promote in violation of Title VII, a plaintiff must show that:

    a.  "[H]e is a member of a protected class;

    b.  [H]e sought and was qualified for the promotion;

c.   [H]e was rejected for the promotion; and

d.   [A] non-member of the protected class was treated more favorably." Young v.

Pennsauken Tp. Sch. Dist., 47 Fed.Appx. 160, 161 (3d Cir. 2002)(unpublished).

50.     In matters where a plaintiff is able to state a *prima facie* case for failure to promote

in violation of Title VII, "he […] is entitled to an inference of discrimination." Mikell v. Marriott

Intern., Inc., 789 F. Supp. 2d 607, 614 (E.D. Pa. 2001).

51.     Here, Mr. Manning is an African-American man, and, as a result, is a member of a

class protected by Title VII.

52.     He was qualified for a promotion to a position on Defendant's management staff

because he previously held a similar role within the same franchise. Further, Mr. Manning was a

dedicated worker throughout his tenure.

53.     Mr. Manning repeatedly requested consideration for a promotion to Defendant's

management staff.

54.     He regularly attempted to discuss a potential promotion, though he was consistently

dismissed my members of Defendant's management staff.

55.     Not only was Mr. Manning repeatedly rejected from the promotions which he

sought, Defendant failed to consider him entirely.

56.     Instead, new employees with less experience, all of whom were white, were

promoted by Defendant.

57.     Defendant treated the white employees, who are not members of a protected class,

more favorably than it treated Mr. Manning.

58.     The instances of Defendant's failure to promote Mr. Manning based on biased and

unequal treatment are the basis for an inference of discrimination.

59.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Mr. Manning's rights protected under federal and state law to be free from discrimination.

### COUNT IV
### Failure to Promote in Violation of the PHRA

60.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

61.     As stated above, a claim brought under the PHRA is "identical" to that of a claim brought under Title VII. Weston, 251 F.3d at 426.

62.     Because Mr. Manning is able to state a *prima facie* claim for failure to promote in violation of Title VII, so, too, will he be able to do so under the PHRA.

63.     Here, Mr. Manning is an African-American man, and, as a result, is a member of a class protected by Title VII.

64.     He was qualified for a promotion to a position on Defendant's management staff because he previously held a similar role within the same franchise. Further, Mr. Manning was a dedicated worker throughout his tenure.

65.     Mr. Manning repeatedly requested consideration for a promotion to Defendant's management staff.

66.     He regularly attempted to discuss a potential promotion, though he was consistently dismissed my members of Defendant's management staff.

67.     Not only was Mr. Manning repeatedly rejected from the promotions which he sought, Defendant failed to consider him entirely.

68.     Instead, new employees with less experience, all of whom were white, were promoted by Defendant.

69.     Defendant treated the white employees, who are not members of a protected class, more favorably than it treated Mr. Manning.

70.     The instances of Defendant's failure to promote Mr. Manning based on biased and unequal treatment are the basis for an inference of discrimination.

71.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Mr. Manning's rights protected under federal and state law to be free from discrimination.

## COUNT V
## Retaliation in Violation of Title VII

72.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

73.     In order to state a *prima facie* claim of retaliation in violation of Title VII, a plaintiff must show that:

   a.  "[H]e engaged in activity protected by Title VII;

   b.  [T]he employer took adverse employment action against [him]; and

   c.  [T]here was a causal connection between [his] participation in the protected activity and the adverse employment action." Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006), as amended (Sept. 13, 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir.1995)).

74.     Activities protected by Title VII include "informal protests of discriminatory employment practices […]." Mufti v. Aarsand & Co., Inc., 667 F. Supp. 2d 535, 552 (W.D. Pa. 2009).

75.     Here, Mr. Manning engaged in a protected activity when he made complaints to Defendant's management staff regarding their failure to consider him for a promotion.

76.     Mr. Manning made additional complaints to members of Defendant's management staff when other, more recently hired employees who had less experience, received promotions. Notably, all of these promoted employees were white.

77.     As stated above, a reduction in the number of hours that an employee is scheduled to work can constitute an adverse employment action for the purpose of an analysis under Title VII. Klimczak, 420 F. Supp. 2d at 386.

78.     Thus, Mr. Manning experienced an adverse employment action when his hours were reduced. During this time, his white counter parts saw in increase in their scheduled hours. Ultimately, Mr. Manning's hours were completely reduced such that he did not appear on Defendant's employee schedule whatsoever.

79.     A causal connection is established in consideration of the temporal relationship between Mr. Manning's engagement in the protected activity and the subsequent adverse employment action.

80.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Mr. Manning's rights protected under federal and state law to be free from discrimination.

## COUNT VI
### Retaliation in Violation of the PHRA

81.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

82.     As stated above, a claim brought under the PHRA is "identical" to that of a claim brought under Title VII. Weston, 251 F.3d at 426.

83.     Because Mr. Manning is able to state a *prima facie* claim for retaliation in violation of Title VII, so, too, will he be able to do so under the PHRA.

84.     Here, Mr. Manning engaged in a protected activity when he made complaints to Defendant's management staff regarding their failure to consider him for a promotion.

85.     Mr. Manning made additional complaints to members of Defendant's management staff when other, more recently hired employees who had less experience, received promotions. Notably, all of these promoted employees were white.

86.     As stated above, a reduction in the number of hours that an employee is scheduled to work can constitute an adverse employment action for the purpose of an analysis under Title VII. Klimczak, 420 F. Supp. 2d at 386.

87.     Thus, Mr. Manning experienced an adverse employment action when his hours were reduced. During this time, his white counter parts saw in increase in their scheduled hours. Ultimately, Mr. Manning's hours were completely reduced such that he did not appear on Defendant's employee schedule whatsoever.

88.     A causal connection is established in consideration of the temporal relationship between Mr. Manning's engagement in the protected activity and the subsequent adverse employment action.

89.     The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Mr. Manning's rights protected under federal and state law to be free from discrimination.

## COUNT VII
### Discrimination in Violation of Section 1981

90.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

91.     Section 1981 of the Civil Rights Act of 1866 has been interpreted by the United States Supreme Court to protect "identifiable classes of persons who are subjected to intentional

discrimination solely because of their ancestry or ethnic characteristics." <u>St. Francis College v. Al-Khazraji</u>, 481 U.S. 604, 613 (1987).

92.    In order for a plaintiff to prevail on a claim under Section 1981, he "must initially plead and ultimately prove that, but for race, [he or she] would not have suffered the loss of a legally protected right." <u>Comcast Corp. v. Natl. Assn. of African Am.-Owned Media</u>, 18-1171, 2020 WL 1325816, at *7 (U.S. Mar. 23, 2020).

93.    Generally, courts apply the same standards of proof for claims under Section 1981 as applies to Title VII claims. <u>Ocasio v. Lehigh Valley Fam. Health Ctr.</u>, 92 Fed. Appx. 876, 879 (3d Cir. 2004) (unpublished); <u>Manatt v. Bank of Am., NA</u>, 339 F.3d 792, 797 (9th Cir. 2003).

94.    Thus, in order to establish a *prima facie* case "for employment discrimination due to a hostile work environment under 42 U.S.C. § 1981, a plaintiff must show:

   a.   [T]hat he or she suffered intentional discrimination because of race;

   b.   [T]he discrimination was pervasive and regular;

   c.   [T]he discrimination detrimentally affected the plaintiff;

   d.   [T]he discrimination would detrimentally affect a reasonable person of the same race in that position; and

   e.   [T]he existence of respondeat superior liability." <u>Id.</u>

95.    Here, Mr. Manning was subjected to unfair treatment in comparison to his white counter parts, all of whom had been more recently hired and had less experience in the industry.

96.    Mr. Manning was passed over for several promotions, and he was regularly dismissed by members of Defendant's management staff. This discrimination diminished his earning capacity, which impacted many facets of his life.

97.     The harassment resulted in extreme frustration, diminished earning capacity, and a reduction in professional advancement. Any individual in Mr. Manning's position would be similarly impacted.

98.     Defendant owed a duty to Mr. Manning to provide him with a workplace free of discrimination. For all of the many listed reasons, including failing to promote him and retaliating against him for speaking out regarding discriminatory practices, Defendant failed to meet this duty to Mr. Manning.

99.     But for Mr. Manning's status as an African-American man, he would have retained his employment with Defendant and likely would have received a promotion to a managerial position.

100.    The foregoing misconduct by Defendant was undertaken with malice and/or reckless indifference to Mr. Manning's rights protected under federal law to be free from discrimination.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor, and against the Defendant, and award all damages available at law and equity, including:

a)  Lost back pay resulting from Defendant's wrongful discharge of Mr. Manning;

b)  Lost front pay continuing into the future for Defendant's unlawful conduct;

c)  Compensatory damages, including emotional damages and humiliation;

d)  Punitive damages to punish Defendant's conduct and to deter similar future conduct;

e)  Costs for bringing this action;

f)  Attorneys' fees;

g)  Pre-judgment and continuing interest; and

h)  Any other relief that this Court deems necessary and proper.

                          Respectfully Submitted,

                          /s/ Prabhu Narahari
                          Prabhu Narahari, Esq.
                          PA ID: 323895
                          **Manes & Narahari LLC**
                          Law & Finance Building
                          429 Fourth Avenue, Suite 300
                          Pittsburgh, PA 15219
                          (412) 626-5588 Direct
                          (412) 650-4845 Fax
                          pn@manesnarahari.com

## VERIFICATION

I, Derrick Manning, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____
Derrick Manning